```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS


ERICA VANESSA LEE,

                    Plaintiff,

vs.                                     Case No. 13-1258-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On April 5, 2012, administrative law judge (ALJ) James Harty issued his decision (R. at 16-33). Plaintiff alleges that she had been disabled since her application date of July 19, 2006 (R. at 16). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since her application

4

date (R. at 18). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, osteoarthritis, possible left shoulder impingement, major depressive disorder without psychotic features, post-traumatic stress disorder, social phobia, cognitive disorder, panic disorder with agoraphobia, panic disorder without agoraphobia, and rule out adjustment disorder with depressed mood (R. at 18). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19). After determining plaintiff's RFC (R. at 21), the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 31). At step five, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national economy (R. at 32). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 33).

**III. Did the ALJ err in his consideration of the medical source opinions regarding plaintiff's mental impairments and limitations?**

In his decision, the ALJ made RFC findings limiting plaintiff to simple, routine, repetitive tasks that are not performed in a fast paced production environment or as an integral part of a team. Plaintiff was found to be able to perform work involving simple work-related decisions and, in

5

general, relatively few workplace changes.  She was found to be able to interact occasionally with supervisors and co-workers, but must avoid interaction with the general public (R. at 21).

On August 30, 2011, Dr. Kent, a psychologist, performed a psychological evaluation on the plaintiff (R. at 893-896), and filled out a medical source statement of plaintiff's ability to do work-related activities-mental (R. at 890-892).[1]  Dr. Kent opined that plaintiff had moderate impairments in handling complex matters (R. at 890).  He further opined that plaintiff had moderate limitations in interacting appropriately with supervisors and co-workers (R. at 891).  Finally, he opined that plaintiff had a marked limitation in dealing with the public, and in responding appropriately to usual work situations and to changes in a routine work setting (R. at 891).  Dr. Kent's findings are based on a review of the records, a mental status evaluation, a psychodiagnostic interview, and psychological testing in 2009 and 2011 (R. at 775, 893).

The ALJ gave great weight to Dr. Kent's opinion that plaintiff had a marked limitation in dealing with the public (R. at 30), and his RFC findings state that she should avoid interaction with the public (R. at 21).  The ALJ also gave great weight to the moderate limitations set forth by Dr. Kent, and

---

[1] Dr. Kent had performed an earlier evaluation and a mental RFC assessment on May 14, 2009 (R. at 772-780).  The ALJ gave greater weight to Dr. Kent's 2nd evaluation and assessment because the record was more complete at that time (R. at 30).

6

limited plaintiff to simple work, with a limitation that she could only interact occasionally with supervisors and co-workers (R. at 21).

Dr. Kent also opined that plaintiff had a marked limitation in responding appropriately to usual work situations and to changes in a routine work setting (R. at 891). The ALJ stated that this finding did not "have support from the record" (R. at 30).

The only other psychological testing and assessment of mental limitations was performed by Dr. Brooks on July 27, 2011 (R. at 867-875). Dr. Brooks performed a clinical interview, a mental status examination and testing (R. at 867). Dr. Brooks opined that, based on her clinical findings, plaintiff's emotional disturbance is of the severity and magnitude sufficient enough to interfere with her ability to perform daily tasks, and preclude her from performing an occupation (R. at 872). Dr. Brooks opined that plaintiff had a number of marked limitations, including the ability to interact with the public, with supervisors, or with co-workers. Dr. Brooks also opined that plaintiff had a moderate limitation in the ability to respond appropriately to usual work situations and to changes in a routine work setting (R. at 875). A moderate limitation is defined as more than a slight limitation, but the individual is still able to function satisfactorily (R. at 874). The ALJ gave

little weight to the opinions of Dr. Brooks because they were based on a single evaluation, there is no indication she reviewed previous records, and questions about the validity of the test results were noted by Dr. Brooks (R. at 30, 870).

Dr. Whitten also performed a psychological assessment on April 11, 2008 (R. at 750-753). Dr. Whitten offered no opinions regarding the extent of plaintiff's impairments or limitations, but noted that she might build up to full time employment (R. at 753). To the extent that Dr. Whitten was offering an opinion on the ultimate issue of disability, the ALJ gave little weight to this opinion (R. at 29). The court finds no error in giving little weight to conclusory opinions on the ultimate issue of disability. See Franklin v. Astrue, 450 Fed. Appx. 782, 785 (10th Cir. Dec. 16, 2011)(court held that other than conclusory statement of total disability, the doctor did not express any opinion concerning claimant's physical or mental capabilities; ALJ discounted opinion because it was unsupported by medical records and invaded the ultimate issue of disability which is reserved to Commissioner; the court concluded that the ALJ decision to give medical opinion little weight was supported by substantial evidence).[2]

---

[2] Treating source opinions on issues that are reserved to the Commissioner, including whether a claimant is disabled, should be carefully considered and must never be ignored, but they are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183 at *2-3.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ chose to give greater weight to the opinions contained in Dr. Kent's 2nd assessment. Dr. Kent had evaluated plaintiff on two occasions, and her evaluations noted that she had reviewed plaintiff's records, while Dr. Brooks did not indicate that she had reviewed the medical records. Dr. Brooks also noted questions about the validity of the test results, finding one test result "likely valid" with elevated scales, ranging from mild to severe elevations, and finding the other

test result to be "invalid" (R. at 870). The court finds no error by the ALJ in giving greater weight to the 2nd assessment by Dr. Kent.

The ALJ adopted all of Dr. Kent's specific assessments, with one exception; the ALJ did not adopt Dr. Kent's opinion that plaintiff had a marked impairment in her ability to respond appropriately to usual work situations and to changes in a routine work setting (R. at 891). The ALJ stated that this finding did not have support from the record (R. at 30). The vocational expert (VE) testified that a person with a marked limitation in this category, and in the ability to work with the public would preclude competitive work (R. at 184).

The only other medical opinion on this issue is from Dr. Brooks. Although Dr. Brooks found plaintiff markedly limited in most categories, Dr. Brooks found that plaintiff was only moderately limited in the ability to respond appropriately to usual work situations and to changes in a routine work setting (R. at 875). Thus, the ALJ correctly stated that a "marked" limitation in this category, as opined by Dr. Kent, is not supported by the record in that the only other medical opinion on this issue does not support a finding of a "marked" limitation in this category.

A moderate limitation is one in which there is more than a slight limitation, but the person is still able to function

satisfactorily (R. at 874). The ALJ, in his RFC findings, did state that plaintiff should have, in general, relatively few workplace changes (R. at 21). Thus, the ALJ acknowledged some limitation in this category. It is not for the court to reweigh the evidence. The ALJ was presented with two fairly conflicting views regarding the degree of plaintiff's limitation in this category. Although Dr. Brooks had found plaintiff to be markedly limited in most categories, in this category, she found plaintiff to be only moderately limited. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views. In summary, the court finds that substantial evidence supports the ALJ's mental RFC findings.

**IV. Did the ALJ err in his consideration of the medical source opinions regarding plaintiff's physical impairments and limitations?**

In his physical RFC findings, the ALJ found that plaintiff could perform medium work. She could lift 50 pounds occasionally, and 25 pounds frequently. She can stand/walk and sit for 6 hours of an 8 hour workday. She can frequently push/pull with the upper extremities. She can frequently stoop, kneel, crouch, or crawl and occasionally climb ladders or scaffolds. Plaintiff can frequently reach overhead (R. at 21).

11

Dr. Burden, plaintiff's treating physician, performed three physical RFC assessments on his client. The first one is dated June 28, 2007, and states that plaintiff can sit for only 1 hour in an 8 hour workday, and can stand/walk for less than 1 hour in an 8 hour workday (R. at 708-711). The second one is dated August 20, 2008, and it states that plaintiff can stand/walk for less than 2 hours in an 8 hour workday, and must periodically alternate sitting and standing to relieve pain or discomfort (R. at 712-713, 782-783). The third one is dated July 11, 2011, and states that plaintiff can sit for 6 hours in an 8 hour workday, and can stand/walk for 6 hours in an 8 hour workday. He further opined that plaintiff will need to change positions at will from sitting, standing, or walking (R. at 860-865). Dr. Burden's three evaluations also set out numerous other postural and environmental limitations, which the ALJ discussed in his opinion (R. at 26-27). Dr. Burden's conclusions on many of these limitations vary in his three assessments.[3]

The ALJ noted the long-standing relationship between plaintiff and Dr. Burden. However, the ALJ stated that the determinative factors with regard to the weight given to these opinions are consistency and supportability. The ALJ stated that the three assessments are not consistent, and Dr. Burden's

---

[3] For example, on June 28, 2007, Dr. Burden opined that plaintiff can occasionally kneel (R. at 709). On August 20, 2008, he opined that plaintiff can never kneel (R. at 713). On July 11, 2011, he opined that plaintiff can rarely kneel (R. at 863).

more extreme limitations in the earlier assessments lack support from the treatment records, and are contradicted by the 3rd assessment by Dr. Burden.  For these reasons, the ALJ accorded little weight to his opinions (R. at 28).

The ALJ noted assessments by Dr. Komes (R. at 694-695) and Dr. Parsons (R. at 699-706), but only gave some or limited weight to their opinions (R. at 28-29).  Plaintiff does not take issue with the relative weight accorded to these opinions.

On September 7, 2011, Dr. Noland prepared a disability consultative examination of the plaintiff  (R. at 898-899), and prepared a physical RFC assessment on the plaintiff (R. at 900-905).  The ALJ gave considerable weight to Dr. Noland's opinions (R. at 28-29), and the ALJ's physical RFC findings clearly reflect the opinions of Dr. Noland (R. at 21, 900-905).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  The ALJ gave valid reasons for discounting the opinions of Dr. Burden, as his opinions varied considerably, without explanation, between 2007-2011.  The ALJ gave greater weight to the opinions of Dr. Noland, who examined plaintiff and prepared a detailed report.  The court will not displace the agency's choice between two fairly conflicting views.  The court finds that substantial evidence supports the ALJ's physical RFC findings.

Plaintiff argues that the ALJ should have recontacted Dr. Burden, Dr. Whitten, Dr. Brooks or Dr. Kent to the extent there was any ambiguity in their findings, or a conflict between their reports (Doc. 16 at 35).  However, under the regulations, effective March 26, 2012, it states that when the evidence is insufficient to determine if a claimant is disabled, the ALJ may take a number of options, one of which is that the ALJ "may" recontact the treating source.  20 C.F.R. 404.1520b(c); 77 FR 10651.  The ALJ did not find the evidence to be insufficient to determine disability, and gave valid reasons for giving greater weight to the opinions of Dr. Noland and Dr. Kent.  On the facts of this case, the court finds that the ALJ did not err by failing to recontact any of the medical sources.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 17th day of September 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge